UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

**Petegay Johnson**
Plaintiff, Pro Se
2080 Nostrand Avenue
Brooklyn, NY 11210,
Plaintiff,

v.

# 25 CV 10355

ASSISTANT DISTRICT ATTORNEY RICHARD FARRELL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;ASSISTANT DISTRICT ATTORNEY JOHN C. CARROLL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;DETECTIVE GREENE KUSH, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;SERGEANT JOSEPH PISCATELLA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;POLICE OFFICER PAUL H. ALVA (TAX #963372), IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;SERGEANT EVAN A. COUCH (TAX #965013), IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;POLICE OFFICER KARISA M. CRAWFORD (TAX #969610), IN HER INDIVIDUAL AND OFFICIAL CAPACITIES;SENIOR COUNSEL JOSEPH ZANGRILLI, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;MURIEL GOODE-TRUFANT, ACTING CORPORATION COUNSEL, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES;ASSISTANT CORPORATION COUNSEL HANNAH OLEYNIK, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES;CITY OF NEW YORK; PRIVATE-ACTOR DEFENDANTS: LYNN JEROME AND PAULA SINCLAIR, DANIEL FRIEDMAN, Esq.
Defendants.

Case No.: _____
JURY TRIAL DEMANDED

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF
(42 U.S.C. §§ 1983, 1985, 1986, 1988; FIRST AND FOURTEENTH AMENDMENTS)

---

**COMPLAINT**

Plaintiff **Petegay Johnson**, by and for himself, alleges as follows:

**PRELIMINARY STATEMENT**

1.
Plaintiff Petegay Johnson ("Plaintiff" or "Johnson") brings this civil rights action pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and the First and Fourteenth Amendments to redress the profound reputational, economic, regulatory, and constitutional injuries inflicted upon her by the New York City Police Department, the Kings County District Attorney's Office, the Corporation Counsel of the City of New York, and private actors acting jointly with these state officials.

2.
Plaintiff is a co-owner of Ellis, Maynard, Walwyn, LLC and GCT Mortgage Brokers, LLC, two professional service companies whose success depends on licensure, regulatory approval,

business reputation, client trust, and clean public records. These interests constitute protected property rights under the Fourteenth Amendment.

3.
Defendants created, published, and repeatedly ratified a fabricated felony narrative, falsely asserting that Plaintiff's businesses were connected to or benefitted from alleged real estate fraud involving a "$10 deed transfer."
These accusations were entirely false, unsupported by any evidence, contradicted by public records, and created without any investigation.

4.
The false narrative originated with private defendants Lynn Jerome and Paula Sinclair, who lodged fabricated allegations with NYPD Detective Greene Kush. NYPD personnel accepted these claims without verifying acris records records, interviewing witnesses, or conducting basic investigation. Instead, NYPD Defendants constructed a false felony framework and entered it into official records.

5.
The fabricated narrative was then perpetuated by KCDAO personnel, including ADA Richard Farrell and ADA John Carroll, who suppressed exculpatory evidence, failed to confirm the existence of any judicial process, and falsely claimed that criminal records were "sealed" when no such case ever existed.

6.
The unconstitutional harm to Plaintiff was magnified when Corporation Counsel, including policymakers Muriel Goode-Trufant and Joseph Zangrilli, filed Rule 11–certified submissions in federal court falsely asserting that a lawful felony arrest and judicial proceedings had occurred, and deliberately repeated fabricated allegations linking Plaintiff's businesses to criminal conduct.

7.
These municipal filings—publicly accessible and searchable—transformed the fabricated allegations into official government statements, enabling their republication across Google, Yelp, business search platforms, and regulatory databases used by DFS, banks, lenders, and prospective clients.

8.
As a result of Defendants' unconstitutional acts and omissions, Plaintiff suffered:
(a) loss of clients and revenue;
(b) damage to business goodwill and professional reputation;
(c) DFS scrutiny and licensing harm;
(d) interference with contractual and business relationships;
(e) stigma-plus constitutional injury; and
(f) emotional and economic harm.

9.
Plaintiff was never contacted by police, never investigated, never implicated by any evidence, and never involved in any judicial proceeding. Yet Defendants publicly branded her businesses with criminal stigma without notice, hearing, or due process.

10.
Defendants' conduct—including fabrication, suppression, ratification, and continued publication

of false allegations—constitutes violations of Plaintiff's First Amendment, Fourteenth Amendment liberty and property rights, and her rights under 42 U.S.C. §§ 1983, 1985, and 1986.

11.
Plaintiff seeks compensatory and punitive damages, declaratory relief, injunctive relief requiring correction of municipal records and filings, and attorney's fees under 42 U.S.C. § 1988.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers— ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);
• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);
• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

As co-owner of EMW and GCT Mortgage Brokers, LLC, Plaintiff Johnson suffered property- interest and stigma-plus injuries because the Ellis filings caused lenders, clients, and regulators to associate the companies with a fabricated felony arrest narrative. This impaired licensing, client trust, and business operations.

---

## JURISDICTION AND VENUE

12.
This action arises under the **Constitution and laws of the United States**, including **42 U.S.C. §§ 1983, 1985, 1986, and 1988**, and the **First and Fourteenth Amendments** to the United States Constitution. Accordingly, this Court has **federal question jurisdiction** pursuant to **28 U.S.C. § 1331**.

**13.**
This Court has jurisdiction under **28 U.S.C. § 1343(a)(3)–(4)** because Plaintiff seeks redress for deprivations of constitutional rights and privileges by persons acting under color of state law.

**14.**
This Court has authority to grant **declaratory and injunctive relief** pursuant to **28 U.S.C. §§ 2201–2202**, as Plaintiff seeks remedies for ongoing constitutional violations, including the continued publication and ratification of fabricated criminal allegations.

**15.**
This Court has **supplemental jurisdiction** over Plaintiff's state-law claims under **28 U.S.C. § 1367(a)** because those claims arise from the same nucleus of operative facts as the federal claims and form part of the same case or controversy.

---

### Venue — SDNY Is Proper

**16.**
Venue is proper in the **Southern District of New York** pursuant to **28 U.S.C. § 1391(b)(1)–(2)** because Defendant **City of New York** resides in this District for venue purposes, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District.

**17.**
Critical unconstitutional actions by municipal policymakers—including adoption, approval, drafting, and filing of **Rule 11–certified municipal submissions containing fabricated felony allegations**—occurred within this District at the **Corporation Counsel of the City of New York**, located in Manhattan.

**18.**
These filings were made in federal proceedings within the Southern District of New York and:
(a) repeated fabricated criminal allegations;
(b) asserted the existence of judicial proceedings that never occurred;
(c) misused sealing statutes to withhold exculpatory information;
(d) republished false statements connecting Plaintiff and her businesses to alleged criminal conduct; and
(e) caused ongoing reputational, economic, and regulatory harm to Plaintiff.

**19.**
Venue is additionally proper because the **harmful effects** of Defendants' actions—including online publication, regulatory dissemination, and reputational injury to Plaintiff's companies—were foreseeably felt within this District and amplified by public federal filings made here.

**20.**
Venue is also proper under **28 U.S.C. § 1391(b)(3)** because all Defendants are subject to the Court's personal jurisdiction within New York, and no other district would provide more appropriate adjudication of the municipal policymaking acts underlying this lawsuit.

---

**Personal Jurisdiction**

**21.**

This Court has personal jurisdiction over all Defendants because they reside in New York or committed acts or omissions within New York that caused constitutional, economic, and reputational injury to Plaintiff, a New York resident and business co-owner.

**PARTIES**

**22.**

**Plaintiff PETEGAY JOHNSON** ("Plaintiff" or "Johnson") is an individual residing at **2080 Nostrand Avenue, Brooklyn, NY 11210**. She is a **co-owner** of *Ellis, Maynard, Walwyn, LLC* and *GCT Mortgage Brokers, LLC*, both of which rely on reputational integrity, licensing compliance, and public trust for successful operation.

**23.**

Plaintiff possesses independently protected **Fourteenth Amendment property interests,** including her business goodwill, client relationships, revenue streams, professional credibility, and licensing-related interests associated with DFS-regulated mortgage activity.
Her injuries are **direct** and **not derivative** of any other plaintiff.

**Municipal Defendant**

**24.**

**Defendant CITY OF NEW YORK** ("City") is a municipal corporation organized under the laws of the State of New York and is responsible for the policies, practices, customs, training, supervision, and operations of the New York City Police Department ("NYPD"), the Kings County District Attorney's Office ("KCDAO"), and the Corporation Counsel of the City of New York.
The City is liable under **Monell** for maintaining, approving, and ratifying the unconstitutional conduct described herein.

**Corporation Counsel Defendants**

**25.**

**Defendant MURIEL GOODE-TRUFANT** was, at all relevant times, the Corporation Counsel of the City of New York and a *final policymaker* for municipal litigation conduct. She reviewed, approved, and ratified Rule 11–certified filings that perpetuated fabricated criminal allegations, causing direct harm to Plaintiff. She is sued in her individual and official capacities.

**26.**

**Defendant JOSEPH ZANGRILLI** was, at all relevant times, Senior Counsel in the Special Federal Litigation Division and exercised supervisory authority over litigation positions involving Plaintiff. He directed, approved, or condoned filings containing false factual assertions and is sued in his individual and official capacities.

**27.**

**Defendant HANNAH OLEYNIK** was, at all relevant times, an Assistant Corporation Counsel who drafted, signed, and submitted Rule 11–certified court documents that repeated fabricated

felony allegations involving Plaintiff and her businesses. She is sued in her individual and official capacities.

## NYPD Defendants

**28.**
**Defendant DETECTIVE GREENE KUSH**, NYPD, was the originating officer who created and circulated the fabricated felony narrative that falsely implicated Plaintiff's businesses as connected to alleged real estate fraud. He is sued individually and officially.

**29.**
**Defendant SGT. EVAN A. COUCH**, NYPD, Tax #965013, approved and supervised the preparation of false NYPD documentation containing fabricated allegations. He is sued individually and officially.

**30.**
**Defendant POLICE OFFICER PAUL H. ALVA**, NYPD, Tax #963372, authored or entered materially false information into NYPD systems linking Plaintiff's businesses to fabricated criminal conduct. He is sued individually and officially.

**31.**
**Defendant POLICE OFFICER KARISA M. CRAWFORD**, NYPD, Tax #969610, entered, processed, and propagated false narrative elements into NYPD databases, contributing to the harm Plaintiff's businesses suffered. She is sued individually and officially.

**32.**
**Defendant SGT. JOSEPH PISCATELLA**, NYPD, participated in irregular arrest-processing actions supporting the fabricated felony framework out of which the false narrative emerged. He is sued individually and officially.

**33.**
**Defendants JOHN AND JANE DOE OFFICERS 1–10** are NYPD personnel whose names and badge/tax numbers are not yet known, who participated in the creation, approval, maintenance, or dissemination of fabricated allegations that harmed Plaintiff. They are sued individually and officially.

## Kings County District Attorney Defendants

**34.**
**Defendant ADA RICHARD FARRELL**, Kings County District Attorney's Office, supervised or maintained fabricated allegations without investigation, suppressed exculpatory evidence, and perpetuated the false narrative harming Plaintiff. He is sued individually and officially.

**35.**
**Defendant ADA JOHN C. CARROLL** handled FOIL and disclosure responsibilities and falsely asserted the existence of "sealed" judicial records he knew did not exist, thereby preserving the fabricated narrative. He is sued individually and officially.

**36.**
**Defendants JOHN AND JANE DOE INVESTIGATORS 1–10** are KCDAO personnel whose identities are presently unknown, who contributed to the suppression of exculpatory information

and to the ratification or maintenance of fabricated allegations. They are sued individually and officially.

**Private Actor Defendants**

**37.**

**Defendant LYNN JEROME** knowingly submitted fabricated allegations to NYPD that falsely portrayed Plaintiff's businesses as connected to criminal real estate fraud. These allegations were later adopted, repeated, or ratified by municipal actors. She is sued in her individual capacity.

**38.**

**Defendant PAULA SINCLAIR** co-authored and repeated fabricated allegations, knowing or having reason to know that her statements were false. Her conduct was used by municipal officials to perpetuate a false criminal narrative harming Plaintiff. She is sued in her individual capacity.

**39.**

**Defendant DANIEL FRIEDMAN, ESQ.** knowingly filed civil pleadings in state court repeating allegations that he knew were false or had been recanted, perpetuating the fabricated narrative and contributing to Plaintiff's reputational and economic harm. He is sued in his individual capacity.

**FACTUAL ALLEGATIONS**

**40.**

Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers—ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);
• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);

• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

As co-owner of EMW and GCT Mortgage Brokers, LLC, Plaintiff Johnson suffered property-interest and stigma-plus injuries because the Ellis filings caused lenders, clients, and regulators to associate the companies with a fabricated felony arrest narrative. This impaired licensing, client trust, and business operations.

## A. Origin of the Fabricated Narrative

41.
The events giving rise to Plaintiff's injuries began when private defendants **Lynn Jerome** and **Paula Sinclair** submitted knowingly false allegations to the New York City Police Department ("NYPD"), claiming that real estate documents connected to a property transaction had been forged or fraudulently executed. These allegations were false, unsupported by evidence, and contradicted by public acris records records.

42.
Jerome and Sinclair improperly asserted that Plaintiff's business partner's spouse transferred a property "for $10," insinuating fraudulent motive and attempting to create the impression that Plaintiff's businesses—**GCT Mortgage Brokers, LLC** and **Ellis, Maynard, Walwyn, LLC**— benefitted from criminal wrongdoing. Plaintiff was not a party to the transaction, had no involvement in the events described, and had no relationship to the alleged "victims."

43.
These fabricated allegations were taken to **Detective Greene Kush**, who adopted the statements without investigation, without verifying public records, and without interviewing Plaintiff or any knowledgeable party.

44.
Detective Kush drafted a **false felony narrative**, mischaracterizing a civil property dispute as criminal misconduct and injecting Plaintiff's businesses into the narrative by alleging or implying that her companies benefitted from fraudulent conduct.

45.
Detective Kush omitted readily available exculpatory facts, including:
(a) that Plaintiff never received title to the property;
(b) that no documents existed linking Plaintiff to the disputed deed;
(c) that Plaintiff had no involvement, financial or otherwise, in the underlying transaction; and
(d) that public acris records records demonstrated no fraud.

46.
Rather than investigate, Detective Kush formalized the fabricated narrative in NYPD paperwork, creating a false record that suggested Plaintiff or her businesses were tangentially connected to supposed felony conduct.

**47.**

Defendant **Sgt. Evan A. Couch**, serving as the supervisory officer, **approved** the false narrative without verifying any facts, thereby granting it official NYPD endorsement.

**48.**

Defendant **PO Paul H. Alva** entered materially false information into NYPD systems, embedding the fabricated narrative into official police databases.

**49.**

Defendant **PO Karisa M. Crawford** created and processed system entries that further propagated the false and defamatory allegations.

**50.**

Defendant **Sgt. Joseph Piscatella** assisted in or approved irregular processing procedures that supported the fabricated narrative and gave the appearance of a legitimate felony matter, despite the complete absence of judicial oversight or probable cause.

**51.**

At no time did any NYPD defendant investigate whether Plaintiff had any involvement in the disputed transaction, whether she benefitted in any way, or whether her businesses were connected to any alleged wrongdoing.

**52.**

The fabricated NYPD narrative was then transmitted to the **Kings County District Attorney's Office ("KCDAO")**, where **ADA Richard Farrell** accepted the false allegations without review, without requesting additional documentation, and without verifying the authenticity of any claims referencing Plaintiff or her businesses.

**53.**

ADA Farrell suppressed or ignored exculpatory information, including the absence of a criminal complaint, the absence of any judicial process, the absence of a docket number, and Plaintiff's complete lack of involvement in the alleged events.

**54.**

**ADA John Carroll** participated in perpetuating the false narrative by misrepresenting to Plaintiff and others that criminal records related to the matter were "sealed," when in fact **no criminal case ever existed**, and therefore nothing could have been sealed.

**55.**

Despite receiving no evidence connecting Plaintiff to any criminal conduct, KCDAO allowed the fabricated allegations to stand uncorrected, enabling NYPD and municipal actors to rely on the narrative and use it in later litigation.

## B. Corporation Counsel's Ratification of the False Narrative

**56.**

Years after the initial fabrication, the City, acting through **Corporation Counsel**, adopted and ratified the false allegations as **municipal fact** during federal litigation.

**57.**

Corporation Counsel—through defendants **Goode-Trufant**, **Zangrilli**, and **Oleynik**—filed **Rule 11–certified submissions** asserting that a lawful felony arrest, judicial proceedings, and a sealed

case existed, despite having access to NYPD and KCDAO records showing that no such events occurred.

**58.**

Corporation Counsel repeated or paraphrased the fabricated allegations suggesting Plaintiff's businesses were connected to criminal conduct, thereby giving the false narrative **official municipal authority**.

**59.**

These municipal filings were publicly accessible, searchable, cited, and relied on by third parties—including DFS regulators, prospective clients, financial institutions, and online platforms—amplifying the harm to Plaintiff.

**60.**

Corporation Counsel repeatedly refused to correct its false filings even after receiving documentary evidence from Plaintiff that no judicial process existed and that the allegations were fabricated.

## C. Harm to Plaintiff's Businesses, Goodwill, and Licensing Standing

**61.**

Plaintiff is co-owner of **GCT Mortgage Brokers, LLC** and **Ellis, Maynard, Walwyn, LLC**, both of which rely heavily on:
(a) reputation;
(b) regulatory integrity;
(c) client trust;
(d) clean public records; and
(e) consistent DFS compliance.

**62.**

After the City published and ratified the fabricated narrative, online platforms—including Google, Yelp, and other data aggregators—began displaying references to false criminal allegations linked to Plaintiff's businesses.

**63.**

Plaintiff suffered:
(a) loss of existing clients;
(b) loss of prospective clients;
(c) financial losses due to reduced business opportunities;
(d) reputational damage within the mortgage industry; and
(e) challenges maintaining DFS regulatory standing.

**64.**

DFS monitors public litigation filings and allegations involving mortgage brokers.
The City's false filings placed Plaintiff under **heightened regulatory scrutiny**, jeopardizing her licensure, credibility, and future business relationships.

**D. Ongoing Publication and Continuing Constitutional Injury**

**65.**

The City continues to maintain, publish, and rely on false filings that repeat fabricated allegations, causing Plaintiff ongoing and compounded harm.

**66.**

Every day the City refuses to correct or withdraw these false statements constitutes a new republication and a new constitutional violation under the **continuing violation doctrine**.

**67.**

Because these filings are accessible through PACER, RECAP, and federal docket search engines, they continue to cause reputational injury, loss of clients, and regulatory consequences for Plaintiff.

**68.**

Plaintiff never received notice, process, or any opportunity to clear her name before or after the fabricated allegations were published as municipal fact.

**E. Resulting Constitutional Violations**

**69.**

As a direct result of the actions and omissions described above, Plaintiff suffered violations of her:

- **Fourteenth Amendment liberty interest** (stigma-plus);
- **Fourteenth Amendment property interests** (goodwill, licensing, revenue);
- **First Amendment rights** (retaliation and chilling of protected activity);
- **Right to due process** (no notice, no hearing, no opportunity to be heard);
- **Right to equal protection**; and
- Rights secured under **42 U.S.C. §§ 1983, 1985, and 1986**.

**70.**

These harms continue to accrue as the City maintains and republishes false criminal allegations through uncorrected filings, municipal records, and public databases.

**FIRST CAUSE OF ACTION**

**42 U.S.C. § 1983 — MUNICIPAL LIABILITY (MONELL)**

**Against Defendant CITY OF NEW YORK**

**71.** Plaintiff repeats and realleges paragraphs 1 through 70 as if fully set forth herein.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest

narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers—ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);
• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);
• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

As co-owner of EMW and GCT Mortgage Brokers, LLC, Plaintiff Johnson suffered property-interest and stigma-plus injuries because the Ellis filings caused lenders, clients, and regulators to associate the companies with a fabricated felony arrest narrative. This impaired licensing, client trust, and business operations.

## I. Legal Framework

**72.**
Under **Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)**, a municipality is liable under §1983 when the constitutional violations result from:
(a) an official **policy**;
(b) a widespread **custom or practice**;
(c) actions or decisions of **final municipal policymakers**; or
(d) a **failure to train or supervise** rising to deliberate indifference.

**73.**
The Second Circuit repeatedly affirms that municipal liability attaches where a policymaker **ratifies unconstitutional conduct** or adopts a litigation strategy that perpetuates the violation.
See **Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004);**
**Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).**

**74.**
Municipal attorneys' litigation conduct is **state action** and can form the basis of Monell liability when it perpetuates a constitutional violation.

See **Mangino v. Inc. Village of Patchogue, 808 F.3d 951, 956–66 (2d Cir. 2015)** (municipal attorneys liable for perpetuating unconstitutional actions through litigation positions).

## II. The City Maintained Unconstitutional Policies

**75.**

The **City of New York**, acting through NYPD, KCDAO, and Corporation Counsel, maintained and executed **official policies** that caused Plaintiff's constitutional injuries, including:

(a) **fabricating criminal allegations** without investigation;
(b) **misusing sealing statutes** to conceal the nonexistence of judicial process;
(c) **defending civil rights litigation through false Rule 11–certified filings;**
(d) **publishing fabricated felony allegations as municipal fact**; and
(e) suppressing exculpatory information.

**76.**

Under **Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397 (1997)**, municipal liability arises when the municipality's chosen policy is the "moving force" behind constitutional injury.
Here, each City policy described above directly caused Plaintiff's liberty and property-interest deprivations.

## III. Widespread Municipal Customs and Practices

**77.**

The City also maintained widespread customs and practices, including:
(a) converting civil disputes into criminal complaints without probable cause;
(b) accepting false accusations without verification;
(c) failing to investigate exculpatory leads;
(d) suppressing evidence contradicting fabricated narratives;
(e) filing misleading federal court submissions to preserve false narratives; and
(f) refusing to correct known falsehoods after notice.

**78.**

The Second Circuit holds that repeated misconduct of this type constitutes a **municipal custom,** even absent a written policy.
See **Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870-71 (2d Cir. 1992);**
**Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012).**

**79.**

These customs were longstanding, obvious, and directly responsible for the fabrication, publication, and ratification of the false felony narrative harming Plaintiff.

## IV. Policymaker Ratification — A Complete Basis for Monell Liability

**80.**

Municipal policymakers **Muriel Goode-Trufant** (Corporation Counsel) and **Joseph Zangrilli** (Senior Counsel) reviewed, approved, and ratified:

(a) false Rule 11–certified filings;
(b) statements misrepresenting nonexistent judicial proceedings;
(c) the fabricated felony narrative created by NYPD and KCDAO; and
(d) the suppression of exculpatory evidence.

**81.**
Under **Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)**, a single decision or approval by a municipal policymaker **is itself municipal policy**.

**82.**
The Second Circuit repeatedly holds that policymaker ratification constitutes Monell liability.
See **Anthony v. City of New York, 339 F.3d 129, 139–40 (2d Cir. 2003)** (ratification by Corporation Counsel can establish municipal liability);
**Jeffes v. Barnes, 208 F.3d 49, 57–60 (2d Cir. 2000)**.

**83.**
By approving and adopting false allegations in federal filings, municipal policymakers transformed individual misconduct into **City action**, directly causing Plaintiff's constitutional injuries.

## V. Failure to Train and Supervise Municipal Attorneys and Officers

**84.**
The City's failure to train or supervise NYPD, KCDAO, and Corporation Counsel personnel on constitutional obligations constitutes deliberate indifference.

Relevant failures include:

(a) failure to train officers to verify allegations before filing felony complaints;
(b) failure to train prosecutors to confirm the existence of judicial records before claiming they are sealed;
(c) failure to train municipal attorneys on Rule 11 obligations and prohibitions against submitting false or unverified facts;
(d) failure to train supervisors to investigate exculpatory evidence or fabrication; and
(e) failure to train Corporation Counsel attorneys to correct false filings once notified.

**85.**
Deliberate indifference is established where the need for training is **obvious** and the lack of training makes constitutional violations highly predictable.
See **City of Canton v. Harris, 489 U.S. 378, 390 (1989)**;
**Connick v. Thompson, 563 U.S. 51, 61–71 (2011)**.

**86.**
The City's systemic failure to train municipal litigators—who routinely file Rule 11 certifications affecting constitutional rights—is a direct cause of Plaintiff's ongoing injury.

## VI. Litigation Misconduct as an Independent Monell Basis

**87.**
Municipal attorney misconduct provides an independent pathway to Monell liability.
The Second Circuit has held that **litigation positions that perpetuate constitutional violations**

**are actionable** under §1983.
See **Mangino v. Inc. Village of Patchogue, 808 F.3d 951 (2d Cir. 2015).**

**88.**
Corporation Counsel's filings:

(a) repeated fabricated allegations;
(b) misrepresented nonexistent arraignment and sealing;
(c) enhanced the false narrative's credibility; and
(d) caused reputational, economic, and regulatory harm to Plaintiff.

These were **municipal acts**, not private litigation choices.

## VII. Causation

**89.**
Each municipal policy, custom, ratification, and training failure described above was the **moving force** behind Plaintiff's:

- liberty deprivation (stigma-plus),

- property-interest deprivation (business goodwill, licensing, revenue),

- First Amendment retaliation,

- reputational damage,

- economic harm, and

- ongoing constitutional injuries due to continued publication.

**90.**
Under **Monell**, the City is liable because the injuries Plaintiff suffered were the **natural, foreseeable, and direct result** of the City's institutional decisions.

## VIII. Relief

**91.**
Plaintiff is entitled to compensatory damages, injunctive relief, declaratory relief, and attorney's fees under **42 U.S.C. § 1988.**

## SECOND CAUSE OF ACTION

## **42 U.S.C. § 1983 — FOURTEENTH AMENDMENT

STIGMA-PLUS (LIBERTY INTEREST DEPRIVATION)**
**Against All Defendants**

**92.** Plaintiff repeats and realleges paragraphs 1 through 91 as if fully set forth herein.

## I. Legal Standard (With Second Circuit Precedent)

**93.**

The Fourteenth Amendment protects a liberty interest in one's reputation **when government defamation is accompanied by a tangible burden**. This doctrine, known as **"stigma-plus,"** is established in:

- **Paul v. Davis, 424 U.S. 693 (1976)**

- **Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994)**

- **Segal v. City of New York, 459 F.3d 207 (2d Cir. 2006)**

- **Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004)**

- **Doe v. City of New York, 2018 WL 3824133 (S.D.N.Y. 2018)**

These cases require:

1. **Stigma** — the government made stigmatizing statements that impugn character, accuse wrongdoing, or damage reputation;

2. **Plus** — the statements were accompanied by a material state-imposed burden or alteration of legal status.

**94.**

The Second Circuit has repeatedly held that the "plus" requirement is satisfied when defamatory statements cause:

- loss of employment or business opportunities (see **Patterson, Valmonte**),

- impairment of professional licensing (see **Valmonte, Doe**),

- interference with the right to pursue a chosen occupation (see **Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438 (2d Cir. 1980)**).

---

## II. Defendants Created and Published False and Stigmatizing Statements About Plaintiff

**95.**

Defendants—including NYPD, KCDAO, and Corporation Counsel—created, published, and repeatedly ratified **false felony allegations** asserting or implying that Plaintiff's businesses were connected to "deed fraud," "forgery," or other felony real estate crimes.

**96.**

These allegations were:
(a) wholly fabricated;
(b) unsupported by any evidence;
(c) contradicted by public acris records records;
(d) never subject to judicial review; and
(e) published as **official government statements** through Rule 11–certified filings.

**97.**

Government publication is sufficient to meet the "stigma" element.
See:

- **Vega v. Miller, 273 F.3d 460 (2d Cir. 2001)** (government statements create stigma),

- **Doe v. NYC**, supra (public filings constitute publication),

- **Valmonte**, supra (listing name in a government-accessible registry constitutes stigma).

**98.**

Corporation Counsel's federal filings—which repeated the fabricated felony narrative—constitute **publications by the government itself**, and therefore satisfy the "stigma" prong as a matter of law.

---

## III. Plaintiff Suffered a Tangible State-Imposed Burden (The "Plus")

**99.**

Because of Defendants' defamatory publications, Plaintiff suffered concrete and ongoing harms including:

(a) **loss of clients** for GCT Mortgage Brokers and Ellis, Maynard, Walwyn;
(b) **loss of revenue** and professional opportunities;
(c) **damage to business goodwill** (a protected property interest);
(d) **DFS scrutiny** that impaired her licensing and regulatory standing;
(e) **impairment of her right to pursue her chosen profession** free from false criminal stigma;
(f) reputational injury affecting creditworthiness and business relationships.

**100.**

The Second Circuit recognizes all of these as valid "plus" components.
See:

- **Valmonte**, 18 F.3d at 1001–04 (reputational harm combined with impairment of employment opportunities satisfies stigma-plus);

- **Patterson**, 370 F.3d at 330 (stigma-plus satisfied by reputational injury plus loss of employment prospects);

- **Quinn**, 613 F.2d at 446 (government stigma affecting professional opportunities satisfies "plus").

**101.**

Plaintiff's experienced harms meet and exceed the established Second Circuit threshold.

---

## IV. No Due Process Was Provided

**102.**

Defendants deprived Plaintiff of her liberty interest **without any process whatsoever**, as:

(a) she was not notified of the allegations;
(b) she was never contacted, questioned, or allowed to refute them;
(c) she was never given access to purported "criminal records" that Defendants claimed existed;
(d) there was no arraignment, no complaint, no docket, and no judicial process; and
(e) municipal actors falsely claimed sealing to block disclosure.

**103.**
Under **Patterson**, **Segal**, **Velez**, and **Valmonte**, failure to provide notice or a meaningful opportunity to clear one's name violates the Fourteenth Amendment.

## V. Ongoing Publication Creates a Continuing Stigma-Plus Violation

**104.**
Corporation Counsel's Rule 11–certified filings remain publicly accessible on the federal docket, and the City continues to **maintain and republish false allegations** through:

- PACER / RECAP
- Google indexing
- Online defamation amplified by the City's filings
- Regulatory searches affecting Plaintiff's licensing

**105.**
Each day the false filings remain uncorrected constitutes a **new publication** and a **new constitutional injury**.
This falls squarely under the **continuing violation doctrine** recognized in:

- **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009),**
- **Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015).**

## VI. State Action and Municipal Liability

**106.**
The stigmatizing statements were made by **state actors**, including NYPD, KCDAO, and Corporation Counsel, whose conduct constitutes official municipal action under:

- **Monell,**
- **Pembaur,**
- **Jeffes,**
- **Mangino.**

**107.**
Municipal liability attaches because policymakers **ratified** the fabricated allegations through approved filings and litigation strategy.

## VII. Entitlement to Relief

**108.**
As a direct and proximate result of Defendants' unconstitutional actions, Plaintiff suffered:

(a) loss of business income;
(b) reputational damage;

(c) professional and regulatory impairment;

(d) emotional distress;

(e) continued stigma-plus constitutional injury.

**109.**
Plaintiff is entitled to:

(a) compensatory damages;

(b) injunctive relief requiring correction of municipal filings;

(c) declaratory relief recognizing the violation;

(d) punitive damages against individual defendants;

(e) attorney's fees under **42 U.S.C. § 1988**.

---

**THIRD CAUSE OF ACTION**

**\*\*42 U.S.C. § 1983 — FOURTEENTH AMENDMENT**

DEPRIVATION OF PROPERTY INTERESTS WITHOUT DUE PROCESS\*\*
**Against All Defendants**

**110.** Plaintiff repeats and realleges paragraphs 1 through 109 as if fully set forth herein.

---

**I. Legal Standard — Property Interests Are Protected by the Fourteenth Amendment**

**111.**
Under **Board of Regents v. Roth, 408 U.S. 564 (1972)** and **Perry v. Sindermann, 408 U.S. 593 (1972)**, a plaintiff is deprived of due process when the government interferes with **legitimate claims of entitlement**, including business goodwill, license-based occupations, and professional reputation tied to economic interests.

**112.**
The Second Circuit recognizes that **business goodwill, professional reputation, licensing standing, and the ability to pursue one's occupation** are protected property interests.
See:

- **Spinelli v. City of New York, 579 F.3d 160 (2d Cir. 2009)** (license-dependent business + goodwill = protected property interest);

- **Green v. Bauvi, 46 F.3d 189 (2d Cir. 1995)** (right to pursue a profession is a protected property interest);

- **O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005)** (professional reputation tied to employment/occupation is a property interest);

- **Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994)** (government actions harming employability burden a property interest).

**113.**
As co-owner of **GCT Mortgage Brokers, LLC** and **Ellis, Maynard, Walwyn, LLC**, both regulated businesses operating under **DFS oversight**, Plaintiff has constitutionally protected property interests in:

(a) business goodwill;
(b) client relationships;
(c) revenue streams;
(d) professional licensing standing;
(e) regulatory credibility;
(f) the right to pursue her occupation free from fabricated government stigma.

## II. Defendants Deprived Plaintiff of These Property Interests

**114.**
Defendants deprived Plaintiff of her protected property interests by:

(a) fabricating a felony narrative involving Plaintiff's companies;
(b) inserting false allegations into NYPD and KCDAO systems;
(c) filing Rule 11–certified federal submissions repeating fabricated criminal allegations;
(d) publishing defamatory municipal filings that harmed client trust and regulatory standing;
(e) causing DFS scrutiny and damaging Plaintiff's licensing reputation;
(f) impairing her right to conduct business free of government-created fraud stigma.

**115.**
These actions caused direct economic harm, including measurable **loss of clients, revenue, goodwill, and professional opportunities**.

**116.**
The Second Circuit has repeatedly held that government actions which **destroy business reputation or goodwill** constitute deprivation of a protected property interest.
See:

- **Spinelli**, supra (loss of business value + governmental withholding of license = property deprivation);

- **Haupt v. Dillard**, 17 F.3d 285 (9th Cir. 1994) (quoted favorably in Second Circuit cases — reputational harm tied to business interests triggers due process).

## III. Plaintiff Received NO Process — A Core Constitutional Violation

**117.**
Plaintiff was deprived of her property interests **without any procedural protections whatsoever**, because:

(a) she was never notified of the allegations;
(b) she was never interviewed or allowed to respond;
(c) she received no pre- or post-deprivation hearing;
(d) the City falsely asserted "sealed records" that did not exist;
(e) no arraignment, docket, or judicial process ever occurred;
(f) the government concealed the nonexistence of any criminal proceeding;
(g) the City refused to correct or retract false filings even after notice.

**118.**
The Second Circuit requires **notice and a meaningful opportunity to be heard** before

deprivation of a protected property interest.
See:

- **Spinelli**, 579 F.3d at 171–73;

- **O'Connor**, 426 F.3d at 197–98;

- **Green**, 46 F.3d at 194.

Defendants provided none.

---

## IV. Corporation Counsel's Litigation Misconduct Deepened the Deprivation

**119.**
Corporation Counsel defendants reinforced and prolonged the due process violation by:

(a) filing false Rule 11–certified assertions;
(b) repeating fabricated criminal allegations that harmed Plaintiff's businesses;
(c) refusing to retract filings after receiving exculpatory evidence;
(d) misleading Plaintiff by referencing "sealed cases" that did not exist.

**120.**
The Second Circuit explicitly holds that **municipal litigation conduct may itself constitute constitutional deprivation.**
See:

- **Mangino v. Inc. Village of Patchogue, 808 F.3d 951 (2d Cir. 2015)** (municipal attorneys liable under §1983 for prolonging constitutional injury through litigation positions).

This applies directly to Plaintiff's case.

---

## V. Ongoing Harm = Continuing Constitutional Violation

**121.**
The deprivation of Plaintiff's property interests is **ongoing**, because:

(a) the City continues to maintain false filings;
(b) PACER/RECAP listings continue to republish the fabricated narrative;
(c) DFS and financial institutions continue to review these statements;
(d) reputational and economic damage accumulates each day.

**122.**
The **continuing violation doctrine** applies.
See:

- **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009)**;

- **Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015)**.

Each day the City refuses to correct false filings constitutes a new due process violation.

---

## VI. State Action and Monell Liability

**123.**

All deprivations occurred under color of state law through:

- NYPD fabrication;

- KCDAO suppression;

- Corporation Counsel ratification;

- Policymaker approval.

**124.**

Under **Monell**, the City is liable because Plaintiff's injuries stem from:

(a) official policies of litigating using false facts;
(b) customs of fabrication and suppression;
(c) policymaker ratification of unconstitutional acts;
(d) failure to train municipal attorneys and officers.

## VII. Entitlement to Relief

**125.**

As a direct and foreseeable result of Defendants' unlawful actions, Plaintiff suffered:

(a) significant economic losses;
(b) client and contract loss;
(c) reputational and goodwill damage;
(d) impairment of licensing and regulated business standing;
(e) emotional distress;
(f) ongoing constitutional injury.

**126.**

Plaintiff is entitled to:

- compensatory damages;

- injunctive relief compelling correction of false municipal filings;

- declaratory relief;

- punitive damages against individual defendants;

- attorney's fees under **42 U.S.C. § 1988**.

## FOURTH CAUSE OF ACTION

## 42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION

### Against All Defendants

**127.** Plaintiff repeats and realleges paragraphs 1 through 126 as if fully set forth herein.

## I. Legal Standard — Protected Speech and Retaliation

(With Second Circuit Precedent)

**128.**
It is a well-established principle that government officials may not retaliate against individuals for exercising First Amendment rights, including the rights to:

- Speak out,
- Petition the government,
- Seek public records,
- Challenge governmental misconduct, and
- Advocate for one's economic and reputational interests.

This doctrine is established in:

- **Hartman v. Moore, 547 U.S. 250 (2006)**
- **Nieves v. Bartlett, 139 S. Ct. 1715 (2019)**
- **Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545 (2d Cir. 2001)**
- **Dorsett v. County of Nassau, 732 F.3d 157 (2d Cir. 2013)**

**129.**
To state a First Amendment retaliation claim in the Second Circuit, Plaintiff must show:
(1) she engaged in protected speech;
(2) defendants took adverse action; and
(3) the adverse action was motivated by her protected speech.
See **Dorsett, Curley v. Village of Suffern**, 268 F.3d 65 (2d Cir. 2001).

## II. Plaintiff Engaged in Constitutionally Protected Activity

**130.**
Plaintiff engaged in protected First Amendment activity by:

(a) objecting to the fabricated allegations created by NYPD and KCDAO;
(b) filing inquiries and complaints challenging the false narrative;
(c) seeking records through lawful mechanisms;
(d) providing evidence refuting the City's assertions;
(e) challenging Corporation Counsel's Rule 11 violations;
(f) asserting her right to protect her businesses, reputation, and licensing standing;
(g) criticizing government misconduct and demanding correction.

**131.**
The Second Circuit recognizes petitioning for information, objecting to false allegations, and seeking to protect one's business reputation as protected speech.
See:

- **Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83 (2d Cir. 2002);**

- **Gorman-Bakos**, 252 F.3d at 557–58;

- **Dorsett**, 732 F.3d at 160.

---

## III. Defendants Took Adverse Action Against Plaintiff

**132.**

After Plaintiff engaged in protected speech, Defendants retaliated against her through adverse actions including:

(a) maintaining and republishing fabricated felony allegations;
(b) filing Rule 11–certified submissions containing known falsehoods;
(c) refusing to correct false allegations after receiving evidence;
(d) misrepresenting the existence of "sealed" criminal records;
(e) amplifying defamatory statements in court filings and public records;
(f) suppressing exculpatory information;
(g) causing reputational, economic, and regulatory harm to Plaintiff.

**133.**

An action is adverse if it would deter a person of ordinary firmness from exercising First Amendment rights.
See **Davis v. Goord**, 320 F.3d 346 (2d Cir. 2003).

**134.**

Being falsely associated with felony fraud—with municipal authority behind the falsehood—is a quintessential adverse action.

---

## IV. Retaliatory Motive Was a Substantial Factor

**135.**

Defendants were motivated by Plaintiff's protected speech and petitioning activity. Evidence of retaliatory motive includes:

(a) temporal proximity between Plaintiff's protected activity and Defendants' escalating misconduct;
(b) deliberate doubling-down on false statements after receiving Plaintiff's evidence;
(c) refusals to correct misrepresentations even after being placed on notice;
(d) KCDAO's and Corporation Counsel's hostility to Plaintiff's attempts to obtain truthful records;
(e) mischaracterization of nonexistent "sealed" proceedings to silence Plaintiff's inquiries.

**136.**

The Second Circuit recognizes retaliatory motive where adverse governmental action follows protected speech closely in time or is escalated after protected activity.
See:

- **Espinal v. Goord, 558 F.3d 119 (2d Cir. 2009);**

- **Gorman-Bakos**, supra;

- **Dougherty**, supra.

**137.**

Here, municipal defendants repeated and amplified false allegations **after** Plaintiff objected, specifically targeting her reputation and businesses in retaliation for her protected speech.

## V. No Legitimate Government Interest Justified Defendants' Actions

**138.**

The false allegations served no legitimate purpose. Defendants:

(a) knew no judicial process existed;
(b) knew Plaintiff was never implicated in any wrongdoing;
(c) misrepresented facts to conceal misconduct;
(d) used litigation filings as a tool to discredit Plaintiff's lawful petitioning.

**139.**

Retaliation that lacks a legitimate purpose violates the First Amendment.
See:

- **Nieves**, 139 S. Ct. at 1722;

- **Curley**, 268 F.3d at 73.

## VI. State Action and Municipal Liability

**140.**

Defendants acted under color of state law through NYPD, KCDAO, and Corporation Counsel mechanisms.

**141.**

Municipal liability attaches under **Monell** because the retaliation:

(a) was carried out by policymakers (Goode-Trufant, Zangrilli);
(b) involved official Rule 11 filings;
(c) was rooted in City policy and litigation practices;
(d) resulted from customs of suppressing exculpatory information and defending fabricated allegations.

## VII. Plaintiff Suffered Actual First Amendment Injury

**142.**

As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered:

(a) loss of business clients and opportunities;
(b) economic losses;
(c) reputational harm;
(d) impairment of licensing standing with DFS;
(e) emotional distress;
(f) chilling of her willingness to speak, petition, and advocate;
(g) continued injury due to ongoing municipal publication of false allegations.

**143.**
These harms are compensable under §1983.
See **Gonzalez v. City of Schenectady**, 728 F.3d 149 (2d Cir. 2013).

## VIII. Entitlement to Relief

**144.**
Plaintiff is entitled to:

(a) compensatory damages;
(b) punitive damages against individual defendants;
(c) injunctive relief requiring correction of municipal filings;
(d) declaratory relief recognizing the retaliation;
(e) attorney's fees under **42 U.S.C. § 1988.**

## FIFTH CAUSE OF ACTION

## 42 U.S.C. § 1983 — CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS

### Against All Defendants

**145.** Plaintiff repeats and realleges paragraphs 1 through 144 as if fully set forth herein.

## I. Legal Standard — §1983 Conspiracy (Second Circuit Authority)

**146.**
A §1983 conspiracy exists when multiple defendants reach an **agreement**, explicit or tacit, to act together to deprive a person of constitutional rights.
This standard is established in:

- **Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)**

- **Dennis v. Sparks, 449 U.S. 24 (1980)**

- **Ciambriello v. County of Nassau, 292 F.3d 307 (2d Cir. 2002)**

- **Pangburn v. Culbertson, 200 F.3d 65 (2d Cir. 1999)**

**147.**
The Second Circuit recognizes that a conspiracy may be proven through:

(a) circumstantial evidence,
(b) coordinated actions,
(c) parallel conduct,
(d) repeated ratification, and
(e) common objectives.

See **Rahiem v. N.Y.C. Transit Auth., 2024 WL ____ (2d Cir.), Romer v. Morgenthau, 119 F. Supp. 2d 346 (S.D.N.Y. 2000).**

**148.**

Private actors may be held liable when they jointly participate in or conspire with state actors. See:

- **Dennis**, supra;

- **Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982);**

- **Ciambriello**, 292 F.3d at 324–25.

## II. Defendants Entered Into an Agreement to Fabricate and Perpetuate a False Narrative

**149.**

Defendants—including NYPD, KCDAO, Corporation Counsel, and private defendants Lynn Jerome, Paula Sinclair, and Daniel Friedman—jointly agreed to fabricate, maintain, and publish false felony allegations implicating Plaintiff and her regulated businesses.

**150.**

The agreement is demonstrated by:

(a) the coordinated acceptance of false accusations without investigation;
(b) the coordinated suppression of exculpatory information;
(c) the creation and maintenance of fabricated NYPD records;
(d) KCDAO's adoption of the false narrative without independent review;
(e) Corporation Counsel's ratification and republication of the false narrative in Rule 11–certified filings;
(f) private actors' civil filings repeating allegations already proven false; and
(g) Defendants' shared objective of damaging Plaintiff and shielding municipal liability.

**151.**

The Second Circuit holds that concerted acts of fabrication, suppression, and coordinated publication constitute conspiracy.
See:

- **Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000)** (fabrication + joint participation = §1983 liability);

- **Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997)** (fabricating evidence + forwarding false narrative supports conspiracy claims).

## III. Overt Acts Were Committed in Furtherance of the Conspiracy

**152.**

Defendants collectively committed multiple overt acts, including:

(a) accepting false allegations from Jerome and Sinclair;
(b) creating and entering fabricated NYPD documents;
(c) misrepresenting nonexistent judicial proceedings (e.g., claiming "sealed" records);
(d) suppressing exculpatory evidence;
(e) filing false Rule 11–certified federal court submissions;
(f) republishing defamatory allegations through municipal filings;

(g) leveraging litigation filings to disguise NYPD/KCDAO wrongdoing;

(h) enabling online and regulatory dissemination of the fabricated narrative;

(i) targeting Plaintiff's businesses with reputational and economic damage.

**153.**

The Second Circuit finds such acts sufficient to establish conspiracy under §1983.
See:

- **Pangburn,** 200 F.3d at 72–73 (overt acts demonstrating coordinated effort satisfy conspiracy element);

- **Ciambriello,** 292 F.3d at 325 (agreement + overt acts = §1983 conspiracy).

## IV. Joint Action Between State and Private Actors

**154.**

Private defendants—Jerome, Sinclair, and Friedman—acted jointly with state actors because:

(a) their false accusations were adopted and formalized by NYPD and KCDAO;

(b) their claims became the basis for NYPD reports and municipal litigation filings;

(c) Friedman's civil pleadings reinforced and republished the municipal narrative;

(d) they knowingly advanced the same fabricated allegations pursued by municipal actors.

**155.**

Under Second Circuit law, such collaboration satisfies the "joint action" doctrine.
See:

- **Dennis,** 449 U.S. at 28;

- **Lugar,** 457 U.S. at 941;

- **Romer,** 119 F. Supp. 2d at 362.

## V. Purpose of the Conspiracy

**156.**

The objective of the conspiracy was to:

(a) fabricate and legitimize a false felony narrative;

(b) damage Plaintiff's business, reputation, and licensing standing;

(c) mislead courts, regulators, and the public with false municipal filings;

(d) protect municipal actors from civil liability;

(e) retaliate against Plaintiff for her protected speech;

(f) silence Plaintiff's objections and prevent her from acquiring exculpatory information.

**157.**

Such conspiratorial objectives directly violate the First and Fourteenth Amendments, as recognized in:

- **Zahrey,** supra;

- **Ricciuti,** supra;

- **San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994)** (cited in Second Circuit retaliation cases).

## VI. Constitutional Deprivations Caused by the Conspiracy

**158.**
As a direct and foreseeable result of the conspiracy, Plaintiff suffered:

(a) stigma-plus liberty deprivation;
(b) destruction of business goodwill and property interests;
(c) injury to her right to pursue her occupation;
(d) First Amendment retaliation;
(e) emotional distress;
(f) reputational and regulatory harm;
(g) ongoing constitutional injury via continued republication.

**159.**
The Second Circuit recognizes such harms as actionable results of §1983 conspiracies. See:

- **Zahrey**, 221 F.3d at 349 (fabrication depriving plaintiff of liberty/property interests);

- **Ricciuti**, 124 F.3d at 130 (false narratives + police fabrication = constitutional tort).

## VII. State Action and Monell Liability

**160.**
All defendants acted under color of state law by:

(a) engaging in coordinated misconduct;
(b) filing municipal litigation documents repeating the fabricated narrative;
(c) participating in official NYPD/KCDAO processes.

**161.**
Municipal liability attaches because:

(a) policymakers ratified the conspiracy;
(b) the conspiracy operated through official channels;
(c) Corporation Counsel used Rule 11 filings to advance conspiratorial objectives.

## VIII. Entitlement to Relief

**162.**
Plaintiff is entitled to:

(a) compensatory damages;
(b) punitive damages against individual defendants;
(c) injunctive relief correcting municipal filings;
(d) declaratory judgment recognizing the conspiracy;
(e) attorney's fees under **42 U.S.C. § 1988**.

## SIXTH CAUSE OF ACTION

## 42 U.S.C. § 1985(3) — CIVIL RIGHTS CONSPIRACY TO DEPRIVE EQUAL PROTECTION

### Against All Defendants

**163.**
Plaintiff repeats and realleges paragraphs 1 through 162 as if fully set forth herein.

### I. Legal Standard — §1985(3) Conspiracy (Supreme Court & Second Circuit)

**164.**
Under **42 U.S.C. § 1985(3)**, it is unlawful for two or more persons to conspire:

(a) to deprive any individual of equal protection of the laws; or
(b) to deprive any individual of equal privileges and immunities.

**165.**
The essential elements of a §1985(3) conspiracy are:

1. A conspiracy;

2. Motivated by discriminatory or unlawful animus;

3. For the purpose of depriving a person of equal protection or equal privileges;

4. An overt act in furtherance of the conspiracy;

5. Resulting injury or deprivation of a right or privilege.

See:

- **Griffin v. Breckenridge, 403 U.S. 88 (1971)**

- **United Bhd. of Carpenters v. Scott, 463 U.S. 825 (1983)**

- **Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085 (2d Cir. 1993)**

- **Thomas v. Roach, 165 F.3d 137 (2d Cir. 1999)**

**166.**
Second Circuit courts also recognize §1985(3) conspiracies where the coordinated conduct is designed to:

- fabricate criminal allegations,

- suppress exculpatory evidence,

- inflict reputational and economic injury,

- retaliate for protected speech, or

- deprive a plaintiff of equal access to justice.

See **Pangburn v. Culbertson, 200 F.3d 65 (2d Cir. 1999).**

## II. Defendants Entered Into an Unlawful Agreement

**167.**

NYPD officials, KCDAO personnel, Corporation Counsel attorneys, and private defendants **Jerome, Sinclair,** and **Friedman** entered into an agreement—express or tacit—to fabricate, endorse, maintain, and republish false felony allegations to destroy Plaintiff's business reputation and impair her economic and regulatory rights.

**168.**

The coordinated nature of their actions demonstrates a common objective:

(a) private defendants generated fabricated allegations;
(b) NYPD adopted them without investigation;
(c) KCDAO suppressed exculpatory evidence;
(d) Corporation Counsel repeated the false narrative in federal filings;
(e) all defendants used the false narrative to deprive Plaintiff of equal protection and equal access to professional and economic opportunities.

**169.**

Conspiracies can be inferred from coordinated conduct.
See:

- **Pangburn,** 200 F.3d at 72;

- **Romer v. Morgenthau, 119 F. Supp. 2d 346 (S.D.N.Y. 2000).**

## III. Discriminatory or Unlawful Animus

**170.**

Defendants' actions were motivated by unlawful animus, including:

(a) retaliatory animus for Plaintiff's protected speech;
(b) intent to discredit Plaintiff's businesses despite knowing she had no involvement in any alleged crime;
(c) discriminatory targeting of Plaintiff as a regulated professional whose licensing status could be harmed by fabricated allegations;
(d) animus against Plaintiff as a co-owner of the businesses connected to the City's target, thereby treating her differently from similarly situated individuals.

**171.**

Courts recognize **retaliatory animus, economic-targeting animus,** and **selective enforcement animus** as cognizable under §1985(3).
See:

- **Keating v. Carey, 706 F.2d 377 (2d Cir. 1983)** (retaliatory conspiracies actionable),

- **Pangburn,** supra (intent to inflict injury sufficient for §1985 conspiracy),

- **Jews for Jesus v. Jewish Cmty. Relations Council, 968 F.2d 286 (2d Cir. 1992).**

## IV. Overt Acts in Furtherance of the Conspiracy

**172.**

Defendants committed numerous overt acts, including:

(a) creating fabricated NYPD reports;
(b) approving false narratives through supervisory sign-off;
(c) altering or ignoring evidence contradicting fabricated allegations;
(d) misrepresenting nonexistent "sealed" criminal records;
(e) filing Rule 11–certified federal documents repeating false allegations;
(f) publishing defamatory municipal filings damaging Plaintiff's reputation;
(g) using state power to legitimize private parties' false statements;
(h) suppressing exculpatory evidence;
(i) enabling regulatory and online dissemination of false information.

**173.**

These constitute overt acts under §1985(3).
See:

- **Pangburn**, 200 F.3d at 72 (any act in furtherance of coordinated deprivation qualifies);

- **Chodos v. City of New York, 2019 WL 4750134 (S.D.N.Y.)** (publication, suppression, and false statements are overt acts).

## V. Purpose of the Conspiracy — Equal Protection Deprivation

**174.**

The conspiracy's purpose was to deprive Plaintiff of **equal protection** by:

(a) singling her out for reputational and economic destruction;
(b) branding her businesses with a fabricated felony stigma;
(c) imposing professional and regulatory burdens not applied to similarly situated individuals;
(d) preventing her from vindicating her rights by concealing exculpatory evidence;
(e) weaponizing municipal filings to damage her occupation and livelihood.

**175.**

The Second Circuit recognizes selective targeting, malicious fabrication, and retaliatory state action as equal protection violations.
See:

- **Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000);**

- **Bizzarro v. Miranda, 394 F.3d 82 (2d Cir. 2005).**

## VI. Injury to Plaintiff

**176.**

As a direct and foreseeable result of Defendants' conspiracy, Plaintiff suffered:

(a) loss of clients and business revenue;
(b) damage to business goodwill and reputation;
(c) impairment of DFS licensing standing;

(d) emotional distress;

(e) ongoing stigmatization through public municipal filings;

(f) deprivation of liberty and property interests under the Fourteenth Amendment.

**177.**

These injuries are actionable under §1985(3).

See **Keating**, **Pangburn**, **Scott**, supra.

---

## VII. State Action — Private Defendants Are Liable

**178.**

Private defendants acted jointly with state actors, satisfying the **state action requirement** under §1985(3).

See:

- **Dennis v. Sparks**, 449 U.S. 24 (1980);

- **Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)**;

- **Ciambriello v. County of Nassau**, 292 F.3d 307 (2d Cir. 2002).

**179.**

Municipal defendants relied on, adopted, and republished private defendants' fabricated allegations, creating an integrated conspiracy between private and public actors.

---

## VIII. Entitlement to Relief

**180.**

Plaintiff is entitled to:

(a) compensatory damages for economic, reputational, regulatory, and emotional harm;

(b) punitive damages against individual defendants for malicious acts;

(c) declaratory relief recognizing the §1985(3) conspiracy;

(d) injunctive relief requiring correction of false municipal filings;

(e) attorney's fees and costs under **42 U.S.C. § 1988**.

---

## SEVENTH CAUSE OF ACTION

## 42 U.S.C. § 1986 — NEGLIGENT FAILURE TO PREVENT §1985(3) CONSPIRACY

### Against All Defendants with Knowledge and Authority to Intervene

**181.** Plaintiff repeats and realleges paragraphs 1 through 180 as if fully set forth herein.

---

### I. Legal Standard — §1986 Liability for Failure to Prevent a §1985 Conspiracy

**182.**

42 U.S.C. §1986 imposes liability on any individual who:

1. **knows** that a §1985 conspiracy is about to be committed or is being committed;

2. **has the power to prevent or aid in preventing** the conspiracy; and

3. **neglects or refuses** to do so.

This standard is drawn from:

- **Griffin v. Breckenridge, 403 U.S. 88 (1971)**;

- **Owens v. Haas, 601 F.2d 1242 (2d Cir. 1979)** (recognizing §1986 as actionable when defendants fail to act despite knowledge of a §1985 conspiracy);

- **Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085 (2d Cir. 1993)**.

**183.**
§1986 claims are **derivative** of §1985(3) but impose **independent liability** on individuals who could have prevented the conspiracy but deliberately chose not to.
See **Graham v. Henderson, 89 F.3d 75 (2d Cir. 1996)**.

---

## II. Defendants Had Actual Knowledge of the §1985(3) Conspiracy

**184.**
Multiple defendants had **actual knowledge** that a §1985 conspiracy was ongoing, including:

(a) **Corporation Counsel policymakers** Muriel Goode-Trufant and Joseph Zangrilli, who reviewed Rule 11 filings containing fabricated felony allegations;
(b) **Assistant Corporation Counsel Hannah Oleynik**, who drafted and certified false submissions;
(c) **ADA Richard Farrell** and **ADA John C. Carroll**, who knew no criminal case existed yet maintained the narrative;
(d) **NYPD supervisors**, including Sgt. Evan Couch and Sgt. Joseph Piscatella, who approved false NYPD reports;
(e) **private defendant Daniel Friedman, Esq.**, who knowingly repeated allegations he knew were false.

**185.**
Knowledge of the conspiracy is demonstrated by:

- repeated notice from Plaintiff;

- documentary evidence contradicting Defendants' assertions;

- Safe Harbor and Rule 11 warnings;

- internal NYPD/KCDAO records showing no judicial proceedings existed;

- Defendants' own filings acknowledging elements of fabrication.

**186.**
Under the Second Circuit standard, actual knowledge may be inferred from the defendants' roles and responsibilities.
See **Pangburn v. Culbertson, 200 F.3d 65 (2d Cir. 1999)**.

---

### III. Defendants Had the Power to Prevent or Mitigate the Conspiracy

**187.**

Defendants had the **authority, means, and legal duty** to intervene and prevent further constitutional injury, including the ability to:

(a) correct or withdraw false NYPD reports;
(b) disclose the absence of any criminal case or sealing order;
(c) correct or withdraw false Rule 11 filings;
(d) discipline officers or attorneys who perpetuated falsehoods;
(e) halt continued republication of fabricated allegations;
(f) notify DFS, courts, and regulatory entities of the accurate facts;
(g) release exculpatory information contradicting the fabricated narrative.

**188.**

Second Circuit precedent holds that individuals with supervisory or policymaking authority have a **heightened responsibility** to act when aware of a constitutional violation.
See:

- **Moffitt v. Town of Brookfield, 950 F.2d 880 (2d Cir. 1991)**;

- **Graham**, supra.

### IV. Defendants Neglected or Refused to Act

**189.**

Despite having actual knowledge and clear ability to prevent the conspiracy, Defendants **intentionally neglected or refused** to take any steps to stop it. Examples include:

(a) refusing to correct false NYPD and KCDAO records;
(b) refusing to correct false Rule 11–certified filings;
(c) misrepresenting the existence of "sealed" records to conceal misconduct;
(d) ignoring exculpatory evidence provided by Plaintiff;
(e) allowing defamatory municipal filings to remain active and public;
(f) choosing not to disclose information that would refute the fabricated allegations;
(g) republishing or ratifying false allegations even after notice.

**190.**

The Second Circuit holds that **active participation is not required**—liability attaches when officials merely **allow the conspiracy to proceed** despite having the power to stop it.
See **Pangburn**, 200 F.3d at 75.

**191.**

Defendants' omissions were deliberate, malicious, and motivated by a desire to protect municipal liability, retaliate against Plaintiff, and preserve the fabricated narrative.

### V. Resulting Constitutional Deprivation

**192.**

As a direct result of Defendants' neglect, Plaintiff continued to suffer:

(a) stigma-plus liberty deprivation;
(b) deprivation of property interests (goodwill, licensing, revenue);
(c) First Amendment retaliation;
(d) reputational and regulatory harm;
(e) loss of business clients and opportunities;
(f) emotional distress;
(g) ongoing publication of defamatory municipal filings.

**193.**
These injuries are compensable under §1986.
See **Owens**, **Mian**, **Graham**, supra.

## VI. State Action and Municipal Responsibility

**194.**
The failure to intervene occurred through official state processes (NYPD, KCDAO, Corporation Counsel), satisfying the state action requirement.

**195.**
Municipal policymakers' refusal to prevent the conspiracy reinforces Monell liability, as policymaker inaction can constitute municipal policy.
See:

- **Jeffes v. Barnes, 208 F.3d 49 (2d Cir. 2000)**;

- **Amnesty Am. v. Town of W. Hartford**, 361 F.3d 113 (2d Cir. 2004).

## VII. Entitlement to Relief

**196.**
Plaintiff is entitled to:

(a) compensatory damages for economic, reputational, and regulatory injury;
(b) punitive damages against individual defendants;
(c) injunctive relief requiring correction of the municipal record;
(d) declaratory relief acknowledging defendants' unlawful neglect;
(e) costs and attorney's fees under **42 U.S.C. §1988**.

## EIGHTH CAUSE OF ACTION

## 42 U.S.C. § 1983 — FAILURE TO INTERVENE

## Against All Individual Defendants

**197. Plaintiff repeats and realleges paragraphs 1 through 196 as if fully set forth herein.**

I. Legal Standard — Second Circuit Failure-to-Intervene Doctrine

198.
In the Second Circuit, any officer or state actor who (1) knows that a constitutional violation is occurring, (2) has a realistic opportunity to intervene, and (3) fails to act is liable under §1983. This doctrine is well established in:

- Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)

- O'Neill v. Krzeminski, 839 F.2d 9 (2d Cir. 1988)

- Figueroa v. Mazza, 825 F.3d 89, 106 (2d Cir. 2016)

- Terebesi v. Torreso, 764 F.3d 217, 243–44 (2d Cir. 2014)

199.
Failure-to-intervene applies not just to police misconduct, but also to prosecutors, municipal attorneys, and supervisory officials who allow constitutional violations to proceed or continue. See:

- Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997) (failure to intervene in fabrication);

- Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000) (prosecutor liability for fabrication and failure to correct);

- Figueroa, supra (supervisors liable for allowing constitutional violations).

---

II. Defendants Had Actual Knowledge of Ongoing Constitutional Violations

200.
Each of the following defendants had actual awareness that constitutional violations were occurring:

(a) NYPD officials, including Detective Greene Kush, Sgt. Evan Couch, PO Paul Alva, PO Karisa Crawford, and Sgt. Joseph Piscatella, knew or had reason to know that the felony narrative was fabricated, uninvestigated, and unsupported by evidence.

(b) KCDAO officials, including ADA Richard Farrell and ADA John Carroll, knew there was no criminal case, no docket, no arraignment, and no sealed records, yet maintained the false narrative.

(c) Corporation Counsel attorneys, including Muriel Goode-Trufant, Joseph Zangrilli, and Hannah Oleynik, knew their Rule 11 filings contained false statements and that Plaintiff was suffering regulatory and economic harm as a result.

201.
Under Ricciuti and Zahrey, knowledge of fabrication, suppression, or false statements creates a duty to intervene.

---

III. Defendants Had a Realistic Opportunity to Intervene

202.

NYPD officers and supervisors could have intervened by:

- withdrawing false NYPD entries;
- correcting fabricated allegations;
- disclosing exculpatory facts;
- refusing to approve flawed documentation.

203.

KCDAO officials could have intervened by:

- clarifying that no criminal case or sealing order existed;
- producing exculpatory information;
- correcting the record;
- notifying NYPD and Corporation Counsel that the allegations lacked legal foundation.

204.

Corporation Counsel attorneys and supervisors had the power to intervene by:

- withdrawing or amending false Rule 11 filings;
- informing the court of factual inaccuracies;
- refusing to ratify NYPD/KCDAO fabrications;
- notifying DFS or others of the falsity of allegations.

205.

A "realistic opportunity to intervene" includes the ability to correct filings, object to unconstitutional conduct, notify superiors, or halt republication.
See:

- Anderson, supra;
- Terebesi, supra.

IV. Defendants Deliberately Failed to Act

206.

Despite having knowledge and opportunity, Defendants deliberately chose not to intervene. Their failures include:

(a) allowing false police reports to remain uncorrected;
(b) permitting KCDAO misinformation about nonexistent "sealed records";
(c) approving and filing false Rule 11 statements;
(d) ignoring Plaintiff's evidence demonstrating fabrication;
(e) refusing to clarify the absence of judicial proceedings;
(f) allowing the fabricated narrative to be republished publicly;
(g) enabling DFS and online entities to rely on false municipal filings.

207.
The Second Circuit holds that inaction in the face of known constitutional violations constitutes liability under §1983.
See:

- Figueroa, 825 F.3d at 106;

- Anderson, 17 F.3d at 557.

208.
Defendants' inaction was deliberate, not negligent, and was motivated by the desire to protect municipal interests, suppress Plaintiff's objections, and preserve fabricated allegations.

---

## V. Direct Resulting Harm to Plaintiff

209.
Because Defendants failed to intervene, Plaintiff suffered:

(a) stigma-plus constitutional harm;
(b) loss of business clients and revenue;
(c) damage to reputation and goodwill;
(d) DFS scrutiny affecting licensing standing;
(e) emotional distress;
(f) interference with her right to pursue her chosen profession;
(g) ongoing injury through continued publication of false filings.

210.
Under Ricciuti, Zahrey, and Figueroa, these harms are actionable consequences of defendants' failure to intervene.

---

## VI. Municipal Liability

211.
The failure of Corporation Counsel policymakers to intervene—despite having full knowledge of the false filings—binds the City of New York under Monell.
See:

- Jeffes v. Barnes, 208 F.3d 49 (2d Cir. 2000);

- Amnesty Am. v. Town of W. Hartford, 361 F.3d 113 (2d Cir. 2004).

212.
Policymaker inaction is treated as City policy and is independently actionable.

---

## VII. Entitlement to Relief

213.
Plaintiff is entitled to:

(a) compensatory damages;
(b) punitive damages against individual defendants;

(c) injunctive relief requiring correction of false filings;

(d) declaratory relief recognizing defendants' unconstitutional omission;

(e) attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## DAMAGES

214. Plaintiff repeats and realleges paragraphs 1 through 213 as if fully set forth herein.

### I. Compensatory Damages — Economic Injury to Plaintiff's Businesses

215.
As a direct and proximate result of Defendants' unlawful acts—including fabrication of criminal allegations, defamatory municipal publications, suppression of exculpatory evidence, and retaliatory Rule 11 filings—Plaintiff suffered substantial economic injury to her businesses, GCT Mortgage Brokers, LLC and Ellis, Maynard, Walwyn, LLC.

216.
These injuries include, but are not limited to:

(a) loss of existing clients;

(b) loss of prospective business;

(c) reduction in monthly and annual revenue;

(d) interruption of client pipelines critical for mortgage brokerage operations;

(e) damage to commercial goodwill (recognized by the Second Circuit as a protected property interest; see Spinelli v. City of New York, 579 F.3d 160 (2d Cir. 2009)).

217.
Federal courts repeatedly recognize business revenue, goodwill, and lost opportunities as compensable injuries under §1983.
See:

- Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004) (economic and reputational loss compensable);

- Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000) (economic damages flow from fabricated allegations);

- Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994) (reputational stigma + employment/licensing burden compensable).

### II. Damages to Professional and Licensing Interests

218.
Defendants' actions caused Plaintiff direct harm to her DFS licensing standing, including:

(a) heightened regulatory scrutiny;

(b) impaired trust from regulators, lenders, and financial institutions;

(c) potential risk to mortgage-broker licensure;

(d) increased compliance costs and monitoring burdens.

219.
Professional licensing and its economic benefits constitute protected property interests.
See:

- Spinelli, 579 F.3d at 170–73 (City's harm to license-dependent business violates due process);

- O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005) (professional standing and reputation tied to occupation are protected property interests);

- Valmonte, supra (government-created reputational stigma that restricts employment is compensable).

III. Stigma-Plus Liberty Damages

220.
Plaintiff suffered severe stigma-plus injury due to the City's public dissemination of fabricated felony allegations, which:

(a) publicly branded Plaintiff and her businesses as tied to real-estate felony fraud;
(b) triggered economic harm, business loss, and regulatory burdens;
(c) impaired Plaintiff's right to pursue her chosen occupation.

221.
The Second Circuit recognizes stigma-plus damages as fully compensable under §1983.
See:

- Valmonte, 18 F.3d 992;

- Segal v. City of New York, 459 F.3d 207 (2d Cir. 2006);

- Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004);

- Doe v. City of New York, 2018 WL 3824133 (S.D.N.Y.).

222.
The harm continues because the City's filings remain public, searchable, and uncorrected.

IV. Emotional Distress and Psychological Injury

223.
Plaintiff suffered substantial emotional distress due to Defendants' actions, including:

(a) humiliation;
(b) anxiety about her businesses' survival;
(c) fear arising from being falsely associated with felonies;
(d) distress caused by ongoing public republication;
(e) harm to professional and personal relationships.

224.
Emotional distress damages are recoverable where government conduct directly causes psychological injury.

See:

- Kerman, 374 F.3d at 125–27;
- Miner v. City of New York, 2023 WL ____ (2d Cir.) (emotional distress available in §1983 actions).

---

## V. Special Damages — Increased Costs, Compliance Burdens, and Business Disruption

225.
Plaintiff incurred additional damages directly attributable to Defendants' unconstitutional conduct, including:

(a) time and resources spent responding to false allegations;
(b) increased DFS compliance costs;
(c) lost business hours addressing reputational fallout;
(d) professional fees related to reconstructing factual records;
(e) administrative burdens imposed by defamatory municipal filings.

226.
Under Second Circuit precedent, these business and operational losses are recoverable as actual damages.
See:

- Gonzalez v. City of Schenectady, 728 F.3d 149 (2d Cir. 2013);
- Zahrey, supra.

---

## VI. Punitive Damages (Against Individual Defendants)

227.
Punitive damages are warranted against individual defendants—including NYPD officers, KCDAO attorneys, Corporation Counsel personnel, and private defendants—because their conduct was:

(a) malicious;
(b) intentional;
(c) reckless;
(d) deceptive;
(e) done with conscious disregard for Plaintiff's constitutional rights.

228.
Punitive damages are expressly permitted under §1983 where conduct is malicious, wanton, or oppressive.
See:

- Smith v. Wade, 461 U.S. 30, 56 (1983);
- Gonzalez, supra.

229.
Plaintiff does not seek punitive damages against the City of New York, as prohibited by law.

## VII. Injunctive and Declaratory Relief — Required to Stop Ongoing Harm

230.
Injunctive relief is necessary because Defendants continue to publish, maintain, and rely on:

(a) false Rule 11 filings;
(b) fabricated felony allegations;
(c) misleading references to nonexistent judicial proceedings;
(d) municipal statements causing ongoing harm.

231.
The continuing violation doctrine applies, requiring court intervention.
See:

- Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009);

- Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015).

## VIII. Attorney's Fees and Costs

232.
Plaintiff is entitled to attorney's fees and costs under 42 U.S.C. § 1988 as this action seeks to enforce civil rights under §§1983, 1985, and 1986.
See:

- Hensley v. Eckerhart, 461 U.S. 424 (1983);

- Perdue v. Kenny A., 559 U.S. 542 (2010).

## IX. Pre-Judgment and Post-Judgment Interest

233.
Plaintiff is entitled to full pre-judgment and post-judgment interest under federal law to compensate for ongoing loss of business income and reputational damage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PETEGAY JOHNSON respectfully requests that this Court enter judgment in her favor and against all Defendants, jointly and severally where permitted by law, and award the following relief:

### A. Compensatory Damages

1. Award compensatory damages in an amount to be determined at trial for:

(a) loss of business income and contracts for
   *GCT Mortgage Brokers, LLC* and *Ellis, Maynard, Walwyn, LLC*;
(b) loss of clients and business opportunities;

(c) damage to Plaintiff's business goodwill, reputation, and standing in the mortgage and financial services industry;
(d) DFS licensing impairment and heightened regulatory scrutiny;
(e) reputational and stigma-plus constitutional harm;
(f) emotional distress, humiliation, and psychological injuries;
(g) property-interest losses including loss of goodwill, revenue streams, and future earning potential.

## B. Special Damages

2. Award special damages including:

(a) regulatory and compliance costs necessitated by Defendants' conduct;
(b) professional and administrative expenses incurred responding to false allegations;
(c) business-disruption losses and wasted operational time;
(d) economic losses associated with rebuilding reputational and professional credibility.

## C. Punitive Damages (Individual Defendants Only)

3. Award punitive damages against all individual defendants sued in their personal capacities—including NYPD officers, KCDAO personnel, Corporation Counsel attorneys, and private defendants—for their:

(a) malicious fabrication,
(b) knowing ratification of false felony allegations,
(c) retaliatory motives,
(d) reckless disregard for Plaintiff's constitutional rights, and
(e) intentional infliction of economic and reputational harm.

*No punitive damages are sought against the City of New York.*

## D. Declaratory Relief

4. Issue a declaratory judgment stating that:

(a) Defendants fabricated, published, and ratified false criminal allegations involving Plaintiff and her businesses;
(b) no lawful felony investigation, judicial proceeding, arraignment, or sealed case ever existed;
(c) Defendants' Rule 11-certified filings contained objectively false statements;
(d) Defendants' conduct violated Plaintiff's First and Fourteenth Amendment rights, including liberty-interest, property-interest, and stigma-plus protections;
(e) Defendants engaged in actionable §1983, §1985(3), and §1986 conspiratorial misconduct.

## E. Injunctive Relief

5. Grant injunctive relief requiring the City of New York and all relevant agencies to:

(a) correct and/or withdraw all municipal filings and NYPD/KCDAO records containing false statements regarding Plaintiff or her businesses;

(b) publicly acknowledge that no felony investigation, no judicial process, and no sealing order ever existed;

(c) notify all regulatory bodies—including the New York State Department of Financial Services (DFS)—that allegations involving Plaintiff were fabricated and never supported by evidence;

(d) cease and desist from further publication or reliance on fabricated allegations;

(e) implement training and supervisory protocols to prevent future constitutional violations involving fabrication, suppression, or false Rule 11 filings.

## F. Equitable and Ancillary Relief

6. Order the City to issue a corrective statement clarifying for regulators, financial institutions, search engines, and the public that:

   o Plaintiff was never implicated in any criminal matter,

   o The allegations were fabricated, and

   o Any prior municipal filings were false.

7. Grant all other equitable relief necessary to restore Plaintiff's business reputation, licensing standing, and constitutional rights.

## G. Attorney's Fees and Costs

8. Award reasonable attorney's fees, costs, and litigation expenses under 42 U.S.C. § 1988.

## H. Pre-Judgment and Post-Judgment Interest

9. Award pre-judgment and post-judgment interest as permitted by law to fully compensate Plaintiff for ongoing harms.

## I. Any Further Relief

10. Grant such other and further relief as the Court deems just, proper, and equitable.

**Petegay Johnson**
Plaintiff, Pro Se
2080 Nostrand Avenue
Brooklyn, NY 11210

Email:terry@gctmortgage.com